843 F.2d 263
 WEST AMERICAN INSURANCE COMPANY, Plaintiff-Appellant,
v.
Richard HINZE, Gerald Ruffino, Individually and as
Administrator of the Estate of Anthony Paul
Ruffino, a deceased minor, Pamela
Ruffino, and the Chicago Park
District,
Defendants-
Appellees.
 No. 87-1299.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 6, 1987.
Decided March 22, 1988.
 
 1
 Robert Marc Chemers, Pretzel & Stouffer, Chtd., Chicago, Ill., for plaintiff-appellant.
 
 
 2
 Michael Resis, Querrey, Harrow, Gulanick & Kennedy, Ltd., Andrea Robin Mayster-Levin, Harvey L. Walner & Assoc., William P. Jones, Gessler, Wexler, Flynn, Laswell & Fleischmann, Chicago, Ill., for defendants-appellees.
 
 
 3
 Before POSNER and COFFEY, Circuit Judges, and NOLAND, Senior District Judge.*
 
 
 4
 NOLAND, Senior District Judge.
 
 
 5
 West American sought a declaratory judgment that a motor vehicle exclusion clause in one of its homeowner policies excludes coverage when the insured's grandson, who is in the insured's unattended motor vehicle, dies when the vehicle rolls into Lake Michigan. The trial court denied West American's motion for judgment on the pleadings and dismissed the action. We affirm.
 
 I. BACKGROUND
 A. Facts
 
 6
 West American issued a homeowner's insurance policy to Richard Hinze effective from November 15, 1984 to November 15, 1985. The policy contained the following exclusion clause:
 
 SECTION II--EXCLUSIONS
 
 7
 1. Coverage E--Personal Liability & Coverage F--Medical Payments to Others do not apply to bodily injury or property damage:
 
 
 8
 ....
 
 
 9
 e. Arising out of the ownership, maintenance, use, loading or unloading of:
 
 
 10
 * * *
 
 
 11
 (2) A motor vehicle owned or operated by, or rented or loaned to any insured.
 
 
 12
 It appears from facts alleged in the underlying state court tort action that on a date in September, 1985 (and thus within the effective period of the homeowner's policy in question), the insured Richard Hinze was baby-sitting his three-year old grandson, Anthony Paul Ruffino. It further appears that with Ruffino in Hinze's automobile, Hinze drove to the Montrose Harbor West compound and stopped the auto at a storage area near an open gate. Hinze left the auto, and it is unclear whether Ruffino remained in the auto at all times, or left and then returned to the unsupervised auto. In any case, the auto, with Ruffino inside, rolled out of the storage area and into Lake Michigan. The minor Ruffino lost his life.
 
 B. Procedural History
 
 13
 The administrator of Ruffino's estate sued Hinze in an Illinois state court, alleging negligent operation of the automobile and negligent supervision of Ruffino. West American filed for a declaratory judgment in the United States District Court for the Northern District of Illinois. Rather than defend the negligent supervision claim, West American sought to establish that it could not be liable under the homeowner's policy, claiming that the automobile exclusion clause operated on these facts to exclude coverage.
 
 
 14
 The trial court ruled that the auto exclusion clause would apply to the negligent operation of the automobile claim. However, with regard to the negligent supervision claim, the trial court found that the state court allegations were sufficiently within potential coverage under the homeowner's policy to require West American to defend in the state court. The trial court determined the auto exclusion clause did not exclude coverage under these facts based on allegations of negligent supervision.
 
 
 15
 West American had argued in the district court that Illinois did not recognize the tort of negligent supervision, but the trial judge reasoned that whether Illinois has or will recognize such tort need not be decided at the district court. Consequently, the trial court "denie[d] plaintiff's motion for judgment on the pleadings and dismisse[d] the amended complaint without prejudice to a later complaint by the plaintiff should the Illinois trial court conclude that there is no negligent supervision tort." West American appeals.
 
 II. DISCUSSION OF LAW
 A. The Duty to Defend
 
 16
 There are several well-established rules in Illinois regarding the duty of an insurer to defend its insured. The general rule is that "[t]here is no question that the allegations of the complaint and not the theory determine whether there is a duty to defend." Management Support v. Union Indem. Insurance, 129 Ill.App.3d 1089, 85 Ill.Dec. 37, 43, 473 N.E.2d 405, 411 (1984), citing Thornton v. Paul, 74 Ill.2d 132, 23 Ill.Dec. 541, 384 N.E.2d 335 (1978). The duty is established if the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy. The duty extends to cases where the complaint alleges several causes of action or theories of recovery, one of which is within the coverage of a policy while the others may not be. Maryland Casualty Co. v. Peppers, 64 Ill.2d 187, 355 N.E.2d 24, 28 (1976) (citations omitted). See also U.S. Fidelity & Guaranty v. State Farm (USF & G I), 107 Ill.App.3d 190, 63 Ill.Dec. 14, 18, 437 N.E.2d 663, 667 (1982) and cases cited therein; Reis v. Aetna Cas. & Sur. Co., 69 Ill.App.3d 777, 25 Ill.Dec. 824, 828-30, 387 N.E.2d 700, 704-06 (1978) and cases cited therein. The threshold that the complaint must pass to present a claim of potential coverage is low, and where there is doubt as to coverage, it should be resolved in favor of the insured. Management Support, 473 N.E.2d at 411, 85 Ill.Dec. at 43. The duty to defend is not diminished by the insurer's knowledge that the allegations are untrue, and the duty to defend is broader than the duty to pay. Tuell v. State Farm Fire & Casualty Co., 132 Ill.App.3d 449, 477 N.E.2d 70, 73, 87 Ill.Dec. 469, 472 (1985).
 
 
 17
 The insurer may refuse to defend only when the allegations clearly show that the claim alleged is beyond coverage. USF & G I, 63 Ill.Dec. at 18, 437 N.E.2d at 667; Reis, 25 Ill.Dec. at 830, 387 N.E.2d at 706. However, if the insurer believes that it has a valid exclusionary defense, it must either (1) obtain a declaratory judgment as to its rights and obligations before or pending trial of the underlying tort action, or (2) defend the tort action under a reservation of rights. Reis, 25 Ill.Dec. at 828, 387 N.E.2d at 704 and cases cited therein. West American chose to seek the declaratory judgment. We thus turn to the issue of the effect of the motor vehicle exclusion clause under these facts.
 
 B. The Motor Vehicle Exclusion Clause
 
 18
 West American's position is that no matter what allegations or theories of recovery are pleaded in the underlying state court action, the motor vehicle exclusion clause operates under the facts in this case because the death of the minor "arose out of the ownership, maintenance, use, loading or unloading of ... a motor vehicle owned or operated by ... any insured." West American urges that because the motor vehicle was the "instrument" of the loss, there can be no coverage. West American relies principally on State Farm Fire & Casualty Co. v. McGlawn, 84 Ill.App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (1980).
 
 
 19
 In McGlawn, an insurer brought a declaratory judgment action. The insurer had issued a homeowner's policy to the insured with a motor vehicle exclusion clause similar to the exclusion clause in this case. The allegation in the underlying suit was negligent entrustment of a motor vehicle to a minor. The Illinois appellate court ruled that the exclusion clause excluded coverage. It held that proof of negligent entrustment of a motor vehicle necessarily includes proof of negligence with the motor vehicle as the instrumentality of proximate cause. Therefore, as negligence with a motor vehicle was intended to be excluded by the exclusion clause, the clause operated to preclude coverage on the negligent entrustment of a motor vehicle claim.
 
 
 20
 We are caused to note that McGlawn is distinguishable from the case now on appeal because McGlawn involved a claim of negligent entrustment, but the instant case includes a claim for negligent supervision. Undaunted by this clear distinction, West American notes the "instrumentality" theory of McGlawn and similarly urges that claims for coverage cannot be considered without an examination of the instrumentality of the loss, and when the instrumentality is a motor vehicle, the exclusion clause precludes coverage.
 
 
 21
 However, other Illinois appellate courts have not interpreted motor vehicle exclusion clauses so broadly. The most significant such case is USF & G I, supra, and its second appeal, USF & G II, 152 Ill.App.3d 46, 105 Ill.Dec. 254, 504 N.E.2d 123 (1987). In USF & G, the insurer had issued a multiperil policy to a day care center. While an employee was driving with children in the day care center's station wagon, the plaintiff child was injured exiting or falling from the auto. The policy contained a motor vehicle exclusion clause similar to the exclusion clause in this case. The underlying tort action alleged negligent operation of the day care center in failing to supervise the children, and also alleged negligent operation of the motor vehicle. The insurer brought a declaratory judgment action. The trial court granted summary judgment for the insurer, but the Illinois appellate court reversed. The court stated that the negligent operation of the day care center claim is:
 
 
 22
 separate and distinct from any allegations relating to the negligent operation of the vehicle.... In other words, if the liability of an insured arises from negligent acts which constitute non-auto related conduct, the policy should be applicable regardless of the automobile exclusion or the fact that an automobile was involved in the occurrence. If an occurrence is caused by a risk included within the policy, coverage is not vitiated merely because a separate excluded risk constitutes an additional cause of the occurrence.
 
 
 23
 USF & G I, 63 Ill.Dec. at 17-18, 437 N.E.2d at 666-67. Accord, Louis Marsch, Inc. v. Pekin Insurance Co., 140 Ill.App.3d 1079, 96 Ill.Dec. 386, 391, 491 N.E.2d 432, 437 (1985).
 
 
 24
 At trial in the underlying tort suit, general verdict forms were submitted to the jury, whose members returned a verdict for the injured child. The court entered a judgment that the policy did cover the accident, motor vehicle exclusion clause notwithstanding. The Illinois appellate court affirmed, holding:
 
 
 25
 [i]f a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy. The insurance carrier has the burden of proof as to whether the injury was caused solely by a proximate cause which is excluded under the policy.
 
 
 26
 USF & G II, 105 Ill.Dec. at 256, 504 N.E.2d at 125. The court ruled that one claim which went to the jury was negligent supervision of the children, and it was not appealed and became a final judgment. Therefore, negligent supervision was a proximate cause of the injury. As the record did not indicate that negligence with an automobile was the sole proximate cause, the exclusion clause did not preclude coverage.
 
 
 27
 Similarly, in Tuell, supra, the insurer attempted to rely on a motor vehicle exclusion clause similar to the one in this case. The judgment in the underlying tort action was on negligent entrustment of a motorcycle and negligent supervision of the child's operation of the motorcycle. The Illinois appellate court refused to exclude coverage, holding
 
 
 28
 [t]he motor vehicle exclusion relied on by State Farm does not by itself and automatically stand as a bar to policy coverage. While the occurrence may have been vehicle-related, allegations of negligent entrustment and supervision are separately recognized causes of action.
 
 
 29
 Tuell, 87 Ill.Dec. at 473, 477 N.E.2d at 74.
 
 
 30
 A recent decision of the Illinois appellate court supports our interpretations of law. Allstate Insurance Co. v. Panzica, 162 Ill.App.3d 589, 114 Ill.Dec. 28, 515 N.E.2d 1299 (1987) was decided ten days after oral arguments were heard in the case now on appeal. Allstate had issued a homeowner's policy to the Panzicas with a motor vehicle exclusion clause similar to the exclusion clause in this case (with certain exceptions not relevant herein). Dino Nicolazzi, a minor, was killed when a dirt bike driven by the Panzica's minor collided with a vehicle. Nicolazzi's representative sued the Panzicas, alleging, inter alia, negligent entrustment of the dirt bike to their minor. Allstate filed for a declaratory judgment that its homeowner's policy did not provide liability coverage under these facts. The Illinois trial court granted summary judgment for Allstate.
 
 
 31
 The Illinois appellate court affirmed. It noted, as do we, that "[i]n interpreting a contract of insurance the general rule is that where the provisions of the policy are clear and unambiguous, it is the duty of the court to enforce them according to their plain meaning," citing Thornton v. Illinois Founders Insurance Co., 84 Ill.2d 365, 49 Ill.Dec. 724, 49 Ill.Dec. 724, 418 N.E.2d 744 (1981). Allstate, 114 Ill.Dec. at 30, 515 N.E.2d at 1301. The appellate court next properly distinguished USF & G as involving a claim for negligent supervision. It noted that the issue in Allstate was the effect of the motor vehicle exclusion clause to the negligent entrustment claim.
 
 
 32
 On that issue, the court applied McGlawn, and stated:
 
 
 33
 Under Illinois law it is clear that where the instrumentality which causes the injury is excluded, no liability coverage is afforded for negligent entrustment of the instrumentality. This is because an injury resulting from the use of the instrumentality is a necessary element of the cause of action. See [McGlawn ].
 
 
 34
 Allstate, 114 Ill.Dec. at 30-31, 515 N.E.2d at 1301-02. In a citation of supplemental authority pursuant to Circuit Rule 28(i), West American urges upon us that this "decision stands for the proposition that the auto exclusion in a homeowner's policy applies where the instrumentality which causes the injury is excluded." As it did with McGlawn, West American attempts to interpret Allstate more broadly and apply it more extensively than Illinois will allow.
 
 
 35
 As the court in Allstate notes, a claim for negligent supervision alleges a claim potentially within the zone of coverage of a homeowner's policy, auto exclusion clauses discussed herein notwithstanding. The "instrumentality" theory, to the extent it is recognized, is clearly limited to a negligent entrustment action for the explicit reason that negligent entrustment includes by definition a finding of negligence with the entrusted instrument. As we have found no Illinois case law so holding regarding a negligent supervision claim, the state court allegations in this case are sufficient to require West American to defend. West American's attempt to broaden Illinois' interpretation of the instrumentality theory cannot succeed in a federal declaratory judgment action.
 
 
 36
 In light of these holdings from Illinois courts on motor vehicle exclusion clauses, we find West American's reliance on McGlawn and Allstate, and on the cases West American cites from other jurisdictions on similar issues, to be unpersuasive.
 
 III. APPLICATION OF LAW
 
 37
 The state court complaint alleges facts within, or potentially within, the coverage of the policy. It is alleged that the minor Ruffino was in Hinze's unattended auto when the auto rolled into Lake Michigan, and from this incident Ruffino died. The state court plaintiff has alleged not only negligent operation of a motor vehicle but negligent supervision of the minor. The duty to defend is not extinguished because two causes of action are pleaded, only one of which may be within coverage while the other is not. Maryland Casualty, supra.
 
 
 38
 Having established the duty to defend, we next examine whether the motor vehicle exclusion clause excludes coverage. We hold that it does not. In this case, clearly USF & G is instructive.[1] It is possible that the liability of the insured may arise from the facts alleging negligent supervision, i.e., "negligent acts which constitute non-auto related conduct." USF & G I, 63 Ill.Dec. at 17-18, 437 N.E.2d at 666-67. Therefore, "the policy should be applicable regardless of the automobile exclusion or the fact that an automobile was involved in the occurrence." Id. The negligent supervision claim is a separately recognized cause of action, and it is non-auto related conduct which is outside the scope of the motor vehicle exclusion clause. Coverage may exist even though "the occurrence may have been vehicle related." Tuell, 87 Ill.Dec. at 473, 477 N.E.2d at 74. Further, West American has not established, as USF & G II requires to exclude coverage, that the injury was caused solely by a proximate cause which is excluded under the policy. USF & G II, 105 Ill.Dec. at 256, 504 N.E.2d at 125.[2] For these reasons, we conclude that when the underlying state court action includes a claim for negligent supervision based on allegations that death resulted from a presence in an unattended automobile, the motor vehicle exclusion clause in this case does not exclude coverage.
 
 Conclusion
 
 39
 We express no opinion as to whether Illinois recognizes the tort of negligent supervision of a minor or whether the state court plaintiff has proven a claim for such tort. Such determinations are better left to the state court in the underlying action. We hold only that the trial judge did not err in dismissing the declaratory judgment action without prejudice pending a determination on the negligent supervision tort by the state court. Accordingly, a declaratory judgment of non-coverage under the motor vehicle exclusion clause may not issue. The judgment of the district court is
 
 
 40
 AFFIRMED.
 
 
 
 *
 The Honorable James E. Noland, Senior District Judge of the Southern District of Indiana, is sitting by designation
 
 
 [1]
 We recognize that USF & G involved a multi-peril policy for the operation of a day care center, and the case now on appeal involves a homeowner's policy. However, because the motor vehicle exclusion clause in each is so similar, we believe any difference in the policies is insignificant in the evaluation of the motor vehicle exclusion clause. Therefore, we find USF & G to be instructive, if not controlling, in the case before us
 
 
 [2]
 We realize that USF & G II was decided just six days before the trial court issued its opinion in this declaratory judgment action. However, we further note that West American has not refuted, distinguished or otherwise referred to USF & G II in its briefs. We find ample information in the record and in the briefs to determine that West American has not established that a proximate cause excluded by the policy was the sole proximate cause of the injury, at least for determining the scope of the exclusion clause and the duty to defend in a declaratory judgment action